## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **In re: RULE 45 SUBPOENA ISSUED TO NON-PARTY PFIZER INC., et al.** | **Misc. Case No. 1:22-mc-366** |
| Relating to the United States District Court for the District of Kansas case captioned: | (Pending in the United States District Court for the District of Kansas, Case No. 20-cv-2065-DDC-TJJ) |
| KPH HEALTHCARE SERVICES, INC. A/K/A KINNEY DRUGS, INC., FWK HOLDINGS LLC, and CÉSAR CASTILLO, LLC, | |
| Plaintiff, | |
| v. | |
| MYLAN N.V., *et al*., | |
| Defendants. | |

## NON-PARTY PFIZER'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH
## <u>PLAINTIFFS' RULE 45 SUBPOENA TO PRODUCE DOCUMENTS</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

I.     This Court Has Jurisdiction Pursuant to Rule 45 ............................................... 6

II.    The Court is Required to Quash Request No. 1 Because it Seeks Disclosure
       of Privileged Documents ..................................................................................... 6

       a.     Request No. 1 Should Be Quashed Because it Seeks Disclosure of
              Attorney-Client Privileged Documents and There Has Been No Waiver .............. 6

       b.     Request No. 1 Should Be Quashed Because it Seeks Disclosure of
              Documents Shielded by the Work-Product Doctrine ........................................... 11

       CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*,
 252 F.R.D. 163 (S.D.N.Y. 2008) ...........................................................................................7

*Canon Inc. v. Tesseron Ltd.*,
 146 F. Supp. 3d 568 (S.D.N.Y. 2015).....................................................................................9

*Ecuadorian Plaintiffs v. Chevron Corp.*,
 619 F.3d 373 (5th Cir. 2010) ................................................................................................11

*Glob. Gaming Philippines, LLC v. Razon*,
 No. 21CV02655LGSSN, 2021 WL 4243395 (S.D.N.Y. Sept. 17, 2021) ..........................2, 11

*In re Grand Jury Proceedings*,
 219 F.3d 175 (2d. Cir. 2000)................................................................................................11

*High Point SARL v. Sprint Nextel Corp.*,
 No. CIV.A. 09-2269-CM, 2012 WL 234024 (D. Kan. Jan. 25, 2012) ...................................10

*Hilsinger Co. v. Eyeego, LLC*,
 No. 13-CV-10594-IT, 2015 WL 11120842 (D. Mass. Aug. 13, 2015) ...................................7

*Immunex Corp. v. Sandoz Inc.*,
 No. CV 16-1118 (CCC), 2017 WL 2466507 (D.N.J. June 7, 2017)...................................7, 10

*INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*,
 No. CV 11-1007-SLR-CJB, 2013 WL 12171721 (D. Del. June 25, 2013) .......................7, 10

*Johnson v. Gmeinder*,
 191 F.R.D. 638 (D. Kan. 2000)...........................................................................................11

*Medinol Ltd. v. Boston Scientific Group*,
 214 F.R.D. 113 (S.D.N.Y. 2002) ........................................................................................12

*Meighan v. Transguard Ins. Co. of Am., Inc.*,
 298 F.R.D. 436 (N.D. Iowa 2014) .......................................................................................12

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
 No. 12–mc–00275, 2013 WL 238176 (S.D.N.Y. Jan. 18, 2013)...........................................6

*NRDC, Inc. v. Ill. Power Res. Generating, LLC*,
 No. 13-CV-1181, 2018 U.S. Dist. LEXIS 9854 (C.D. Ill. Jan. 22, 2018) ...............................12

ii

*In re Regents of University of California*,
    101 F.3d 1386 (Fed. Cir. 1996)..............................................................................7, 9

*Schaeffler v. United States*,
    806 F.3d 34 (2d Cir. 2015).....................................................................................2, 7, 8

*Smithkline Beecham Corp. v. Apotex Corp.*,
    193 F.R.D. 530 (N.D. Ill. 2000).................................................................................8

*Sportvision, Inc. v. MLB Advanced Media, L.P.*,
    No. 18CV03025PGGVF, 2022 WL 4467054 (S.D.N.Y. Sept. 26, 2022) ...........................7, 9

*United States v. Nobles*,
    422 U.S. 225 (1975)...............................................................................................11

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(6)................................................................................................5

Fed. R. Civ. P. 45......................................................................................................1

Fed. R. Civ. P. 45(d)(3)(A)(iii) ................................................................................3, 11

Fed. R. Civ. P. 45(d)(3)(A)-(B) .................................................................................6

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 45, non-parties Pfizer Inc., King Pharmaceuticals LLC, and Meridian Medical Technologies, LLC (collectively "Pfizer"), respectfully submit this memorandum of law in support of their motion to quash, in part, Plaintiffs'[1] third-party subpoena dated December 7, 2022 (the "Subpoena"). Plaintiffs are direct purchasers of EpiPen auto-injectors in a pending antitrust class action against Mylan in the District of Kansas (the "Action"[2]). Pfizer was previously a party to the Action but is now a third-party because the district court granted Pfizer's motion to dismiss and dismissed Pfizer from the Action. However, Plaintiffs continue to pursue their claims against Mylan in the Action and now seek discovery from Pfizer as a third-party in support of those claims.

Plaintiffs' subpoena includes two broad document requests. Pfizer has agreed to produce some targeted discovery in response to the Subpoena and is not challenging Document Request for Production No. 2. Pfizer will produce responsive, non-privileged documents in response to that request. But Plaintiffs' Document Request for Production No. 1 ("Request No. 1"), which seeks documents listed on Pfizer's privilege log in another case should be quashed in its entirety because those privileged documents are not subject to disclosure.

This dispute centers around a privilege log created in a different case. Pfizer and Mylan were previously defendants in a separate multidistrict litigation in the District of Kansas brought by a class of indirect purchasers of EpiPen (the "IPP MDL"). That case proceeded through full merits and expert discovery before Pfizer and Mylan separately settled the action resolving all claims brought by indirect purchasers with trial on the horizon. Three years after the IPP MDL

---

[1] Plaintiffs are KPH Healthcare Services, Inc. a/k/a Kinney Drugs Inc., FWK Holdings LLC, and César Castillo, LLC.

[2] The Action refers to *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJJ (D. Kan.).

began, Plaintiffs (direct purchasers of EpiPen from Mylan) commenced the Action.  The antitrust

claim asserted by Plaintiffs in the Action is an exact copy of one of the claims asserted by the

indirect purchasers in the MDL.  To streamline discovery in the Action, Pfizer agreed to re-produce

to Plaintiffs much of the discovery Pfizer produced in the IPP MDL.  This included producing

Pfizer's privilege log from the IPP MDL.

Plaintiffs now seek a set of approximately 900 documents listed on Pfizer's IPP MDL

privilege log.  Specifically, Request No. 1 seeks all "communications and documents dated or

exchanged between Pfizer and Mylan before July 1, 2013 identified in the Pfizer Privilege Log

Excerpts that were previously withheld in the MDL action on the grounds of attorney-client

privilege and the common interest doctrine . . . ."  Although the district court in the Action

previously ordered Mylan to produce documents from Mylan's IPP MDL privilege log, it did so

based on an application of an "identical legal interest" standard of the common interest doctrine

that is contrary to the law in the Second Circuit, especially based on the facts and context of Pfizer

and Mylan's common legal interest.  *Schaeffler v. United States*, 806 F.3d 34, 40-41 (2d Cir. 2015)

(no waiver of privilege where the exchanging parties share a common interest that is "of a

sufficient legal character"); *Glob. Gaming Philippines, LLC v. Razon*, No. 21CV02655LGSSN,

2021 WL 4243395, at *3 (S.D.N.Y. Sept. 17, 2021) (courts do not require an identical legal interest

for common interest protection to apply).[3]  The district court order only pertained to Mylan; it did

not require Pfizer to produce documents from Pfizer's IPP MDL privilege log.  As explained

---

[3] Although not necessary for this Court's resolution of the issue, Pfizer submits that the Kansas
district court's ruling on Plaintiffs' motion to compel also is not supported by applicable Tenth
Circuit law.

below, these documents are properly withheld as privileged, and, pursuant to Rule 45(d)(3)(A)(iii), this Court should quash Request No. 1 of the subpoena.

## FACTUAL AND PROCEDURAL BACKGROUND

**The EpiPen.**  Former Pfizer subsidiary Meridian manufactures EpiPen and, during the relevant time period, Pfizer owned the relevant patents that covered EpiPen.  FAC[4] ¶¶ 4.  Those patents expire in 2025.  Pursuant to a supply agreement (the "Supply Agreement") between Pfizer and Mylan, Pfizer granted Mylan an exclusive license under Pfizer's EpiPen patents to market, distribute, and sell EpiPen in the U.S.  FAC ¶¶ 4-5.  Pfizer does not and has never distributed or sold EpiPen in the U.S.

**The Teva Patent Litigation.**  In December 2008, Teva Pharmaceuticals USA, Inc. ("Teva") sought FDA approval to market a generic version of EpiPen.  FAC ¶ 116.  In August 2009, Pfizer sued Teva for patent infringement.  On April 26, 2012, Pfizer and Teva settled that litigation (the "Teva Settlement").  The Teva Settlement granted Teva a license to market generic EpiPen beginning in June 2015—ten years before the EpiPen patents expire.  FAC ¶¶ 6, 131, 141, 143.  As part of the Supply Agreement, Pfizer was required to notify Mylan of any potential infringement actions (like the Teva litigation) and both Mylan and Pfizer were required to "jointly determine in good faith the appropriate course of action."  FAC ¶ 132.  Additionally, although Mylan was not a party to the Teva litigation, it executed a covenant not to sue Teva as part of the Teva Settlement.  FAC ¶ 125.  In connection with the Teva Litigation, Pfizer (as the patent holder) and Mylan (as the exclusive licensee) entered into a formal Common Interest Agreement.  FAC ¶ 117.

---

[4] Consolidated Fourth Am. Class Action Complaint, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (Sept. 21, 2021), ECF No. 128 (the "FAC").

**The IPP MDL.**  In February 2017, indirect purchasers of EpiPen commenced various actions against Mylan and Pfizer relating to EpiPen that were consolidated in the IPP MDL in the District of Kansas.  The plaintiffs in the IPP MDL asserted claims under various state antitrust and consumer protection statutes and under the federal Racketeer Influenced and Corrupt Organization Act (28 U.S.C. § 1962) ("RICO") statute.  In support of their legal claims, the IPP MDL plaintiffs asserted several separate factual theories of alleged misconduct one of which was premised on alleged delay of Teva's generic EpiPen through an alleged "reverse-payment" patent settlement.

**The Action.**  In February 2020, Plaintiffs commenced the Action.  The operative complaint in the Action asserts a single claim based on one of the same factual theories from the IPP MDL described above:  alleged generic delay based on a purported "reverse-payment" in the Teva Settlement.

**Discovery in the Action.**  Because there was some overlap between the allegations and factual theories in the IPP MDL and the Action, the parties to the Action agreed that Pfizer and Mylan would re-produce the materials that Pfizer and Mylan had produced in the IPP MDL.  This included Pfizer's and Mylan's privilege logs from the IPP MDL.  In March 2022, Plaintiffs moved to compel the production of certain documents identified on Mylan's and Pfizer's IPP MDL privilege logs that were withheld on the basis of the attorney client privilege and the common interest doctrine.[5]  Despite acknowledging that Pfizer and Mylan had expressly entered into a common interest agreement and stood in a licensor-exclusive licensee relationship with respect to Pfizer's patent rights as to EpiPen, Plaintiffs argued that Mylan and Pfizer waived privilege any

---

[5] Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Requests for Production of Documents, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (Mar. 25, 2022), ECF No. 175.

time they shared otherwise privileged communications with each other.  Mylan and Pfizer both opposed Plaintiffs' motion to compel.[6]  Before the district court ruled on Plaintiffs' motion to compel, it granted Pfizer's Rule 12(b)(6) motion to dismiss and dismissed Pfizer from the Action.[7]

The magistrate judge in the Action eventually granted Plaintiffs' motion to compel as to Mylan only and ordered Mylan to produce 115 documents from its privilege log that were withheld on the basis of the common interest doctrine based on the magistrate judge's interpretation of Tenth Circuit law.[8]  The magistrate judge did not rule on Plaintiffs' motion to compel as to Pfizer and instead expressly stated that Plaintiffs' request for relief against Pfizer had been mooted by Pfizer's dismissal from the case.[9]  Mylan subsequently objected to the magistrate judge's order regarding the common interest documents[10] but the district court denied Mylan's objection and declined to overrule the magistrate judge's order.[11]

On December 7, 2022, Plaintiffs served Pfizer with a third-party subpoena seeking:

1) All communications and documents dated or exchanged between Pfizer and Mylan before July 1, 2013 identified in the Pfizer Privilege Log Excerpts that were previously withheld

---

[6] The Mylan Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (Apr. 11, 2022), ECF No. 182; Pfizer's Opposition to Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Requests for Production of Documents, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (Apr. 11, 2022), ECF No. 181.

[7] Mem. & Order, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (Aug. 8, 2022), ECF No. 241.

[8] Mem. & Order, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (Aug. 23, 2022), ECF No. 252.

[9] *Id.* at 1 n.2.

[10] Mylan Objections to and Motion to Review Magistrate Judge's Order of August 23, 2022, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (September 13, 2022), ECF No. 270.  Although Pfizer was not a party to the Action at this time, Pfizer filed a submission as an interested party in the disclosure of otherwise privileged documents on Mylan's privilege log that had been exchanged between Pfizer and Mylan.  Pfizer Notice of Joinder in Mylan's Objections to and Motion to Review Magistrate Judge's Order of August 23, 2022 (Sept. 23, 2022), ECF No. 289.

[11] Mem. & Order, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (December 6, 2022), ECF No. 320.

in the MDL Action on grounds of attorney-client privilege and the common interest doctrine, with the exception of those communications and documents also withheld as attorney work product; and

2) All communications and documents responsive to Plaintiffs' First Set of Requests for Production of Documents to the Pfizer Defendants served on November 25, 2021.

Pfizer does not seek to quash Plaintiffs' second request but respectfully requests that the Court quash the first request because it seeks privileged documents that are not subject to disclosure.

## ARGUMENT

### I.   This Court Has Jurisdiction Pursuant to Rule 45

Federal Rule of Civil Procedure 45 assigns jurisdiction over a motion to quash a subpoena to "the court for the district where compliance is required." FED. R. CIV. P. 45(d)(3)(A)-(B). Here, Pfizer is located in New York, NY and the subpoena commands production at Nussbaum Law Group P.C., 1211 Avenue of the Americas, New York, NY 10036. Gandesha Decl. at ¶ 4, Ex. 1. Thus, jurisdiction is proper in the Southern District of New York.

### II.   The Court is Required to Quash Request No. 1 Because it Seeks Disclosure of Privileged Documents

#### a.   Request No. 1 Should Be Quashed Because it Seeks Disclosure of Attorney-Client Privileged Documents and There Has Been No Waiver

Through Request No. 1 of the Subpoena, Plaintiffs seek discovery of approximately 900 documents that Pfizer previously withheld from discovery in the IPP MDL. Plaintiffs contend that the documents at issue were "exchanged between Pfizer and Mylan," and they presumably seek the documents on the grounds that by sharing the documents with each other, Pfizer and Mylan waived any privilege in them. But, as explained below, the documents at issue are protected from disclosure by the common interest doctrine, which precludes a waiver of privilege.

"The common interest doctrine . . . is an exception to the general rule that the voluntary disclosure of privileged materials to a third party waives any applicable privilege." *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 12–mc–00275, 2013 WL 238176, at *2 (S.D.N.Y. Jan.

18, 2013).  The "common interest rule is intended to allow clients to share information with an attorney for another party who shares the same legal interest."  *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 170 (S.D.N.Y. 2008).  Thus, the attorney client privilege is not waived by sharing a document with a third-party as long those parties share a common interest that is "of a sufficient legal character."  *Schaeffler*, 806 F.3d at 40-41.

Courts routinely hold that patent-holders and their exclusive licensees share a common legal interest for purposes of the common interest doctrine.  *See In re Regents of University of California,* 101 F.3d 1386, 1390 (Fed. Cir. 1996) (concluding that legal interests between patent owner and exclusive licensee were "substantially identical" for application of the common-interest exception because "valid and enforceable patents" was "in the interest of both parties"); *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18CV03025PGGVF, 2022 WL 4467054, at *2 (S.D.N.Y. Sept. 26, 2022) (citing *In re Regents* and finding common interest satisfied where patent co-owners were formulating response to potential infringement); *Immunex Corp. v. Sandoz Inc.*, No. CV 16-1118 (CCC), 2017 WL 2466507, at *3 (D.N.J. June 7, 2017) ("if a given communication is privileged, and assuming it was made in furtherance of the [patent] licensing agreement and/or prosecution, scope, and validity of the [] Patents, the common interest doctrine would apply to protect it"); *Hilsinger Co. v. Eyeego, LLC*, No. 13-CV-10594-IT, 2015 WL 11120842, at *2 (D. Mass. Aug. 13, 2015) (common interest doctrine applied where parties were in process of finalizing patent license agreement and "were pursuing a common legal strategy concerning the enforceability of the patents-in-suit"); *INVISTA N. Am. S.à.r.l. v. M&G USA Corp*., No. CV 11-1007-SLR-CJB, 2013 WL 12171721, at *8 (D. Del. June 25, 2013) (parties held "identical interests" where patent-holder "granted [licensee] a bundle of rights in the patents-in-suit, but retained substantial rights for [patent-holder], including ownership of the patents and the

right to commence patent litigation"); *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000) (finding a common legal interest between parties to an exclusive licensing agreement that gave licensor primary responsibility for legal defense of the licensed patents, and licensee responsibility to provide reasonable assistance, "which makes their interests essentially identical").

Here, Pfizer, the owner of the EpiPen patents, and Mylan, the exclusive licensee of those patents, were engaged in a "common legal enterprise" sufficient to satisfy the common interest doctrine when they enforced the EpiPen patents against Teva and later resolved the patent litigation via settlement. *Schaeffler*, 806 F.3d at 40. As licensor and exclusive licensee, Pfizer and Mylan were contractually obligated under their Supply Agreement to jointly discuss and execute the "appropriate course of action" with respect to the Teva patent infringement litigation. FAC ¶ 132. Indeed, Pfizer and Mylan expressly acknowledged their common legal interest as to the Teva patent litigation by entering into a formal "Common Interest Agreement" to enable them to share privileged attorney-client communications critical to the prosecution and resolution of the litigation. FAC ¶ 117. Hundreds of the documents identified on Pfizer's IPP MDL privilege log reflect this contractual arrangement, with Pfizer's attorneys communicating with Mylan's attorneys about the Teva litigation and possible resolution of that litigation via settlement. *See, e.g.*, Log No. 6,011 identifying October 31, 2011 email from "Jill Ondos, Esq." (Mylan's in-house counsel) to "Jeff Rennecker, Esq." (Pfizer's in house counsel) described as "Confidential communication with attachments among counsel seeking legal advice regarding patent litigation with Teva." These communications are plainly of a "sufficient legal character" to fall within the scope of the common interest doctrine. *Schaeffler*, 806 F.3d at 40-41.

Further, it is critical, and consistent with both the law of the Second Circuit and public policy, that patent-holders like Pfizer be able to speak freely with their exclusive licensees about legal matters on which their legal interests are aligned by virtue of such a license.  The broad privilege waiver Plaintiffs seek here would upend Pfizer's reasonable expectations as to its privileged communications.  It would prevent patent-holders, like Pfizer, and their exclusive licensees from relying on a predictable and uniform rule protecting privileged communications, including communications relating to litigation challenging the validity of the very patents that lie at the heart of their legal licensing relationship.

Pfizer's patents provided it with a "bundle of rights," which included the legal right to grant Mylan an exclusive license to market and sell EpiPen devices.  *See Canon Inc. v. Tesseron Ltd.*, 146 F. Supp. 3d 568, 575 (S.D.N.Y. 2015) ("A patent is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or part." (citation omitted)).  When Pfizer granted Mylan an exclusive license under the EpiPen patents to market and sell EpiPen devices in the United States, Pfizer and Mylan unquestionably came to share a common legal interest in the bundle of rights conveyed by the EpiPen patents. *Canon Inc.*, 146 F. Supp. 3d at 575 ("The holder of an exclusive license 'comes so close to having truly proprietary interests in the patent,' that she is entitled to enforce the patent's monopoly through the courts—but only 'through or in the name of the owner of the patent,' who ordinarily must be joined in any action." (citations omitted)).  A rule that would impose a broad waiver of privilege as to all communications among parties that share legal rights and duties relating to exclusively licensed patents, including as to the parties' legal strategy in litigation relating to the validity and enforcement of those patents, is plainly contrary to law and would have profoundly deleterious policy implications for patent-owners and exclusive patent-licensees.  *See In re Regents,* 101 F.3d at 1390; *Sportvision, Inc.*, 2022 WL

9

4467054, at *2; *Immunex Corp.*, 2017 WL 2466507, at *3; *INVISTA N. Am. S.à.r.l.*, 2013 WL 12171721, at *8.

Finally, as Plaintiffs concede in their complaint, the common legal interest shared between Pfizer and Mylan was not limited to intellectual property rights but also extended to other duties and obligations they shared with regard to EpiPen.  FAC ¶ 112.  Indeed, the very existence of the antitrust claims asserted in the IPP MDL and the Action against Pfizer and Mylan, which involve the prosecution and settlement of the Teva patent litigation, are proof that Pfizer and Mylan shared the same <u>legal</u> interest in, among other things, settling the Teva litigation on terms that would avoid a future antitrust challenge from the Federal Trade Commission and/or the private plaintiffs' bar.

Pfizer acknowledges that the District of Kansas reached a different conclusion when it granted Plaintiffs' motion to compel Mylan to produce documents from Mylan's IPP MDL privilege log subject to the common interest privilege.  Pfizer respectfully submits that: (a) the district court incorrectly interpreted Tenth Circuit precedent to require an "identical" legal interest in the context of a patentee-exclusive licensee relationship, *see High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2012 WL 234024, at *8 (D. Kan. Jan. 25, 2012) (finding elements of common interest doctrine satisfied and recognizing that "inventor/patentee and potential licensee had a 'substantially identical' legal interest in the subject of the communication—valid and enforceable patents—because of the potentially and ultimately exclusive nature of their license agreement"); and (b) regardless of which standard applies, the district court reached the incorrect conclusion in finding that the common interest doctrine did not apply to Pfizer and Mylan based on the facts discussed above.

But setting aside whether the district court's ruling was correct under Tenth Circuit law, the district court's ruling is inconsistent with Second Circuit law, which governs this motion. *Compare* Mem. & Order, *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, 2:20-cv-02065-DDC-TJ (December 6, 2022), ECF No. 320 (holding that magistrate judge's requirement that Mylan and Pfizer share "identical" legal interests was not contrary to law of the Tenth Circuit) *with Glob. Gaming Philippines, LLC*, 2021 WL 4243395, at *3 ("Courts have not required the parties to have 'identical legal interests' in order for the rule to apply; rather, they need 'a limited common purpose,' which necessitates disclosures to certain parties which would otherwise serve to waive the attorney-client privilege.").  Request No. 1 should thus be quashed pursuant to Rule 45(d)(3)(A)(iii).

### b.   Request No. 1 Should Be Quashed Because it Seeks Disclosure of Documents Shielded by the Work-Product Doctrine

Plaintiffs' broad request for privileged communications between Pfizer and Mylan may also be quashed for the independent reason that it seeks documents that are plainly protected by the work-product doctrine.

Plaintiffs recognize that they are not entitled to discovery of documents that are subject to the work-product doctrine because the standard for a finding of waiver as to materials subject to the work-product immunity is even higher than that applicable to communications subject to the attorney-client privilege.  *See In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d. Cir. 2000) (stating that "the work-product doctrine is distinct from and broader than the attorney-client privilege") (citing *United States v. Nobles*, 422 U.S. 225, 239-40 (1975)); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 (5th Cir. 2010); *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) ("In contrast [to the attorney-client privilege], a party asserting work product immunity is not required to prove 'non-waiver.'").  Numerous of the documents Plaintiffs seek via the

11

Subpoena are properly subject to withholding on the basis of the work-product doctrine.  For example, many of the documents reflect Pfizer's and Mylan's attorneys' mental impressions and opinions about whether and how to settle the patent litigation with Teva.  Such documents fall squarely under the work-product doctrine, and the fact such documents were exchanged between Pfizer and Mylan does not waive the work-product protection, regardless of whether Pfizer and Mylan shared a common legal interest with respect to the subject matter of the documents. *Medinol Ltd. v. Boston Scientific Group*, 214 F.R.D. 113, 114 (S.D.N.Y. 2002) (stating that "it is clear that disclosure of work product to a party sharing common litigation interests is not inconsistent with the policies of … protecting privacy that underlie the work product doctrine"); *NRDC, Inc. v. Ill. Power Res. Generating, LLC*, No. 13-CV-1181, 2018 U.S. Dist. LEXIS 9854 (C.D. Ill. Jan. 22, 2018) ("The details of settlement strategy are exactly the kind of attorney mental impressions and opinions that the work product privilege is designed to protect."); *Meighan v. Transguard Ins. Co. of Am., Inc.*, 298 F.R.D. 436, 445 (N.D. Iowa 2014) ("As for the other documents and claims notes related to mediation or settlement, I find these documents are properly protected under the work product privilege as they were prepared in anticipation of litigation (or avoiding such litigation)….").

Pfizer did not waive any protections afforded by the attorney work product doctrine and Request No. 1 should be quashed because it seeks such documents.

## CONCLUSION

For the reasons set forth herein, the Court should grant Pfizer's motion to quash Request No. 1 of the Subpoena.

Dated:  December 21, 2022                    Respectfully submitted,


                                             /s/ *Raj Gandesha*
                                             Raj S. Gandesha
                                             Edward Thrasher
                                             Kathryn Swisher
                                             WHITE & CASE LLP
                                             1221 Avenue of the Americas
                                             New York, NY 10020
                                             Telephone: (212) 819-8200
                                             Fax:        (212) 354-8113
                                             rgandesha@whitecase.com
                                             edward.thrasher@whitecase.com
                                             kathryn.swisher@whitecase.com

                                             *Counsel for Pfizer Inc., King*
                                             *Pharmaceuticals LLC, and Meridian*
                                             *Medical Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2022, a true and correct copy of the foregoing was

served via electronic mail upon all attorneys of record in the Action:

Thomas P. Cartmell (KS #17020)
Eric D. Barton (KS #16503)
Tyler W. Hudson (KS #20293)
**WAGSTAFF & CARTMELL, LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: (816)701-1100
Fax: (816) 531-2372
tcartmell@wcllp.com
ebarton@wcllp.com
thudson@wcllp.com

Dianne M. Nast (admitted pro hac vice)
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Telephone: (215) 923-9300
Fax: (215) 923-9302
dnast@nastlaw.com

Michael L. Roberts (admitted pro hac vice)
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, AR 72223
Telephone: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us

*Counsel for KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. and FWK Holdings, LLC*

Norman E. Siegel (D. Kan. # 70354)
Rachel E. Schwartz (KS Bar # 21782)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200 Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
siegel@stuevesiegel.com
schwartz@stuevesiegel.com

Linda P. Nussbaum (admitted pro hac vice)

14

**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40thFloor
New York, NY 10036
Telephone: (917) 438-9102
lnussbaum@nussbaumpc.com

Joseph H. Meltzer (pro hac vice forthcoming)
Ethan J. Barlieb (pro hac vice forthcoming)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jmeltzer@ktmc.com
ebarlieb@ktmc.com

*Counsel  for César Castillo, LLC*

Brian Fries
**LATHROP & GAGE LLP**
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri  64108-2618
Telephone: (816) 292-2000
Fax: (816) 292-2001
bfries@lathropgage.com

Adam K. Levin
David M. Foster
Carolyn A. DeLone
Kathryn M. Ali
Charles A. Loughlin
Michael David Gendall
**HOGAN LOVELLS US LLP**
555 13th Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
adam.levin@hoganlovells.com
david.foster@hoganlovells.com
carolyn.delone@hoganlovells.com
kathryn.ali@hoganlovells.com
chuck.loughlin@hoganlovells.com
mike.gendall@hoganlovells.com

*Counsel for the Mylan Defendants*

By:   */s/ Raj Gandesha*

*Counsel for Pfizer Inc., King*
*Pharmaceuticals LLC, and*
*Meridian Medical Technologies, Inc.*